Madden, Judge,
dissenting.
The stockholders, through their interest in the predecessor corporation, owned, in addition to a profitable going business, a valuable asset. That asset was a coal lease at five cents a ton royalty. The coal property was apparently such that an operator could have afforded to pay a much higher royalty and still have made a profit. If the owners of the predecessor corporation had decided to liquidate it, and take individual ownership of the lease, and sublease it to another operator, that operator’s royalty payments would, of course, have been deductible as rents. Here the owners elected to *131 do that, but they themselves formed the new corporation. However, they changed substantially the legal relations which they had had with the former corporation. Their right to the rents, or over-riding royalties, they retained as individuals. To be sure, their interest in these royalties was in proportion to their ownership of the stock of the respective corporations, but that would have been true if the sublease had been to a stranger operator. That was the proportion in which they owned the old corporation and its assets, including the lease.
Their rights as individuals to the over-riding royalties were not tied to their stockholdings in the new corporation. There was no covenant that they must be transferred together. Within a comparatively short time after the arrangement was made, 50 percent of the stock of the new corporation passed, by normal devolution, to persons other than the owners of the over-riding royalties.
I think that royalty payments not in fact made to stockholders, or made to stockholders not as such but only because they happen to continue to own the right to. the royalty payments, are not the substantial equivalent of dividends. If the separation, which was 50 percent complete in the tax years in question, later became 100 percent complete, and the only payments which the corporation could afford to .make were the royalty payments to non-stockholders, it would be hard indeed to regard the payments as dividends.
Parties may put a transaction through two steps instead of one for the sole purpose of making it non-taxable, or less taxable, although, apart from the tax question, the form which they give the transaction would be a waste of time and paper and ink. United States v. Cumberland Public Service Co., 338 U. S. 451, affirming 113 C. Cls. 460.
In the instant case, the arrangement adopted had, as is said in the opinion of the court the purpose of assuring a more definite income to some of the then principal stockholders, in addition to the purpose of reducing taxes. The arrangement also made permanent and important changes in the relations to the corporation of the persons who were, as individuals, to receive the royalty payments. The company became unconditionally liable to make these payments, *132 whether it made money on its mining operations or not, and whether the persons owning the royalty rights were stockholders or not.
The transaction was, I think, much more than the sham which it is called in the opinion of the court. I would allow the plaintiff to recover.
Whitaker, Judge, concurs in the foregoing dissent.
FINDINGS OK KACT
The court having considered the evidence, the facts as stipulated by the parties, the briefs and the argument of counsel, makes the following findings of fact:
1. Ingle Coal Corporation, plaintiff herein, is a corporation duly organized under and existing by virtue of the laws of the State of Indiana. It was organized on June 30, 1942, for the purpose of engaging in the business of mining bituminous coal, and its principal office is located at Elber-feld, Indiana. Its authorized capital stock consisted of 3,000 shares, all common, with a par value of $100 each. The returns for the years here involved were filed with the Collector of Internal Revenue for the District of Indiana.
2. Ingle Coal Company, plaintiff’s predecessor, was a corporation organized under the laws of the State of Indiana in September 1928. Its capital stock consisted of 2,000 shares which, at all times, was closely held in equal proportions by the families of the four children of David Ingle, Sr. Its capital stock on June 30, 1942, was held by the following—

Stockholder Shares owned

Frances I. Bebb_ 500
Katherine I. Mitchell- 500
David Ingle_ 300
David Ingle, Jr- 100
Thomas H. Ingle- 100
William D. Ingle_ 250
William D. Ingle, Jr- 50
Kenneth It. Ingle_ 50
Jane Ingle Fleig- 50
Bradford B. Ingle- 50
Donald B. Ingle- 50
Total_2,000
*133 Frances I. Bebb and Katherine I. Mitchell were the daughters of David Ingle, Sr.; William D. Ingle and David Ingle were his sons. David Ingle, Jr., and Thomas H. Ingle were sons of David Ingle. William D. Ingle, Jr., Kenneth K. Ingle, Jane Ingle Fleig, Bradford B. Ingle, and Donald B. Ingle were the children of William D. Ingle.
3. Ingle Coal Company, plaintiff’s predecessor, was engaged in the business of mining bituminous coal on lands held under lease. The coal lands originally held under lease by said company were worked out by 1940. On June 11, 1940, a lease on certain coal lands located near Elberf eld, Indiana, was executed by James K. Wasson and Charlotte E. Wasson, as lessors, and the Ingle Coal Company, as lessee, which lease was supplemented by an agreement executed by the Ingle Coal Corporation and dated August 8, 1942. A copy of the original lease is marked Exhibit 1 and by this reference made a part hereof. The supplemental agreement made available additional mining lands which the lessors had acquired after the date of the original lease. The coal lands covered by this lease and supplement thereto will be hereinafter referred to as the Wasson lease.
4. During the year 1940, modern mechanized equipment was installed by Ingle Coal Company, the lessee, in the Ditney Hill Mine on the Wasson lands, and coal was produced therefrom as follows:

By Ingle Goal Company: Tons

1940_ 31,028
1941_419, 824
1942 (First 6 months)_ 322,421

By Ingle Coal Corporation:

1942 (Last 6 months)_ 383, 705
1943_ 751,692
1944_ 933, 719
1945_818,531
1946_711,091
1947_ 855,222
1948_ 684,474
5.The gross sales of Ingle Coal Company in 1940, 1941, and the six months ended June 30, 1942, were $77,795.17, $588,011.56 and $474,145.22, respectively. The company *134 paid royalties during said years under the lease executed ón June 11,1940, in the amounts of $1,551.40, $20,991.22 and $16,121.05, respectively.
6. In the spring of 1942, the Binkley Coal Company of Chicago, Illinois, made an offer of $1,000,000 for the assets of Ingle Coal Company. This offer was rejected, one of the reasons being the substantial amount of Federal income taxes which would result with respect to both the company and the stockholders individually if the properties were sold.
7. David Ingle, the president of the Ingle Coal Company, was at all times the dominant personality in its affairs and those of plaintiff and was aware that if additional royalty deductions claimed in the return were allowed the corporate tax would be reduced.
8. After consultation with their attorney in the spring of 1942, the stockholders of Ingle Coal Company evolved and decided to adopt a plan which included the formation of a new company to be known as Ingle Coal Corporation. The plan contemplated that the Ingle Coal Company distribute all its assets to its stockholders, which they in turn would transfer to the Ingle Coal Corporation on June 30, 1942. For such assets the Ingle Coal Corporation would issue its stock to the same stockholders in the same proportion in which they held stock in the Ingle Coal Company. In addition, it would assume the liabilities of the Ingle Coal Company andj would agree to pay to the eleven named stockholders a further “royalty” of 5^ a ton. It was also agreed that the four stockholders — Frances I. Bebb, Katherine I. Mitchell, David Ingle, and William D. Ingle — would subscribe to 500 additional shares of the capital stock of the Ingle Coal Corporation to be paid for as hereinafter set forth.
9. On June 25, 1942, the directors of the Ingle Coal Company held a meeting for the purpose of consenting to the formation of the new corporation. A copy of the minutes of that meeting is marked Exhibit 1A and by this reference made a part hereof.
10. On June 80, 1942, the stockholders of the Ingle Coal Company held a meeting, all stockholders being present in person or by proxy, for the consideration of the proposal *135 referred to in finding 8. The following resolution was adopted:
Be it resolved, That Ingle Coal Company, a corporation organized in 1928 under the laws of the State of Indiana, discontinue business and that all_ its property and assets of every sort and description be distributed to its stockholders, or to their nominee or nominees, effective at the close of business on June 30, 1942, in proportion to the respective holdings by such stockholders of the capital stock in said corporation, and subject to the obligation of such stockholders, their nominee or nominees, to pay and discharge all debts and discharge and carry out all obligations of said corporation of every sort and description, whether now accrued or later to accrue, and on such basis that all such property and assets be so distributed and that such distribution thereof be accepted by said stockholders at the value of such property and assets at the close of business on June 30, 1942 and in full and complete cancellation and redemption of all of the capital stock of said corporation; and
Be it further resolved, That the President and Secretary of said corporation be and they are hereby authorized and directed to make such distribution by making all necessary and proper transfers, conveyances and assignments of all property and assets of every sort, real and personal, tangible and intangible, belonging to said corporation, effective at the close of business ¡on June 30, 1942, direct to the owners of the capital stock of said corporation or to such nominee or nominees as such stockholders may designate, and that such transfers, conveyances and assignments of such property and assets be so made and accepted at the value thereof at the close of business on June 30, 1942, and be so made and accepted subject to the obligation of the party or parties to whom such property and assets are transferred to pay and discharge all debts and discharge and carry out all obligations of said corporation, of every sort and description, and on such basis that such distribution be made and accepted in full and complete cancellation and redemption of all the outstanding capital stock of said corporation.
Following the adoption of the above resolution, the minutes stated:
Each of the stockholders of the corporation, either in person or by their duly authorized representatives *136 and proxies present at the meeting who held powers of attorney authorizing them to act for such absent stockholders on all matters, agreed to accept the proposed distribution of all of the property and assets of the corporation on the basis and subject to the provisions of said resolution, and agreed that they would forthwith surrender their capital stock in the corporation as can-celled and redeemed upon such distribution being made to their nominee hereinafter named, and further agreed to sign the minutes of this meeting to evidence such consent and agreement on their part.
And each of the stockholders of the corporation acting as aforesaid, authorized and directed that all of the real and personal property and all assets of the corporation of every sort and description be distributed as contemplated by the said resolution just passed, and be transferred and conveyed into Ingle Coal Corporation, which is a new corporation organized in June 1942 under the General Corporation Act of the State of Indiana, which said Ingle Coal Corporation was named as the nominee of each and all of said stockholders.
There being no further business, the meeting adjourned.
A copy of the minutes of this meeting is marked Exhibit 2 and by this reference made a part hereof.
11. On June 30, 1942, pursuant to the foregoing, the existence of the Ingle Coal Company was terminated and its assets were transferred to and its liabilities were assumed by its stockholders, in accordance with the provisions of Exhibit 2 which is partially set forth in finding 10.
12. Thirty minutes after the meeting of stockholders of Ingle Coal Company on June 30,1942, the identical persons held a meeting for the purpose of organizing the Ingle Coal Corporation, plaintiff herein. After organization and election of officers the following proposal was considered:
The undersigned, who are the holders and owners of all of the outstanding 2,000 shares of capital stock of Ingle Coal Company, an Indiana corporation, having designated Ingle Coal Corporation, a corporation organized in June 1942 under the laws of the State of Indiana, as the nominee of the undersigned, to which will be transferred and conveyed all of the real estate and personal property and assets of every sort and description *137 owned by said Ingle Coal Company, effective at the close of business on the 30th day of June 1942 on such basis that such transfer and conveyance of such assets of said Ingle Coal Company shall constitute distribution of all its assets to its undersigned stockholders and shall be made and accepted in full and complete liquidation of all of the outstanding capital stock of said corporation and shall be subject to the obligation to pay and discharge all debts and obligations of said Ingle Coal Company, all pursuant to a resolution duly passed by the stockholders of said Ingle Coal Company on the afternoon of June 30, 1942, hereby
PROPOSE AND OFFER
to said Ingle Coal Corporation that the undersigned will cause all such real and personal property and assets of said Ingle Coal Company to be so transferred to Ingle Coal Corporation, effective at the close of business on June 30, 1942, and that in consideration thereof said Ingle Coal Corporation shall assume and agree to pay and discharge all debts and obligations of Ingle Coal Company assumed by the undersigned stockholders in the liquidation of Ingle Coal Company for the account of the stockholders; and that Ingle Coal Corporation shall, in consideration of such transfer and conveyance, issue to the undersigned 2,000 shares of the total 3,000 shares of the capital stock of said Ingle Coal Corporation which said corporation is authorized to issue, such 2,000 shares of stock to he issued to the undersigned in the following amounts respectively:

Shares

Frances I. Bebb-500
Katherine I. Mitchell_500
David Ingle_300
David Ingle, Jr_100
Thomas H. Ingle_100
William D. Ingle-250
William D. Ingle, Jr_ 50
Kenneth K. Ingle- 50
Jane Ingle Fleig- 50
Bradford B. Ingle_ 50
Donald B. Ingle_ 50
and that the property and assets of said Ingle Coal Company, so to be transferred to said Ingle Coal Corporation shall be transferred at the value thereof at the time said transfer becomes effective at the close of business on June 30, 1942, and that the difference between the actual value of the property *138 and assets so transferred and so received by Ingle Coal Corporation and the par value of the 2,000 shares of capital stock of Ingle Coal Corporation issued therefor, which par value will amount to the sum of $200,000, will be credited by Ingle Coal Corporation to the account of the stockholders of Ingle Coal Corporation, and such credit, less any liabilities paid for the stockholders of Ingle Coal Corporation, will be paid in cash or notes or constitute paid-in surplus of Ingle Coal Corporation, or otherwise, as may be directed by the officers of Ingle Coal Corporation; and that, in further consideration of said transfer and conveyance of said assets of Ingle Coal Company to said Ingle Coal Corporation, there shall be executed by Ingle Coal Corporation a separate agreement by which Ingle Coal Corporation shall assume all obligations and duties which were assumed by Ingle Coal Company in the coal lease dated June 11, 1940, executed by James R. Wasson and Charlotte E. Was-son, as lessors, and by said Ingle Coal Company, as lessee, which lease was duly recorded in the office of the Recorder of Warrick Comity, Indiana in Miscellaneous Record 25 at pages 13 to 19, inclusive, and by which Ingle Coal Corporation shall agree to pay, as additional compensation and royalty for coal mined by said Ingle Coal Corporation under said lease the sum of five cents per ton for all coal hereafter mined by Ingle Coal Corporation under said lease, which additional compensation and royalty of five cents per ton shall be paid to the undersigned stockholders on the 25th day of each month for coal mined during the previous calendar month, which payment shall be made to the undersigned stockholders in the following proportions, namely:

Percent

Frances I. Bebb_ 25
Katherine I. Mitchell_ 25
David Ingle_ 17
David Ingle, Jr- 4
Thomas H. Ingle_ 4
William D. Ingle- 15
William D. Ingle, Jr_ 2
Kenneth It. Ingle_ 2
Jane Ingle Fleig_ 2
Bradford B. Ingle_ 2
Donald B. Ingle_ 2
And the undersigned, Francis I. Bebb, Katherine I. Mitchell, David Ingle and William D, Ingle, further *139 and separately propose to said Ingle Coal Corporation that each of them will purchase 125 shares of the authorized capital stock of said Ingle Coal Corporation at par for the sum of Twelve Thousand Five Hundred Dollars ($12,500.00) each, and will each pay therefor by crediting as paid on the principal of the notes payable to each of them respectively, each of which notes is for the principal sum of $68,115.20, and which notes were dated April 1,1942 and executed by Ingle Coal Company, and are to be assumed by said Ingle Coal Corporation, the sum of Twelve Thousand Five Hundred Dollars ($12,500.00), which amount shall be credited on each of said four notes by endorsement on the back thereof after they have been assumed by said Ingle Coal Corporation, so that the principal sum which will remain unpaid on each of said notes after such credit thereon has been made will be $55,615.20.
The proposals herein contained are made this 30th day of June, 1942 by the undersigned, subject to acceptance by said Ingle Coal Corporation by endorsement of acceptance on the form provided below, upon such proposals being accepted by vote of the stockholders or directors of said Ingle Coal Corporation.
Signed in Evansville, Indiana, this 30th day of June, 1942.
Pursuant to a lengthy resolution the following acceptance was made :
The undersigned, Ingle Coal Corporation, hereby accepts each of the proposals contained in the foregoing instrument and assents to and agrees to be bound by the terms and provisions thereof and to assume and carry out the obligations and duties by it to be assumed and carried out as provided in the foregoing instrument, and to issue fully paid and nonassessable shares of its capital stock accordingly. This acceptance is made pursuant to a resolution duly passed at the meeting of the Board of Directors of Ingle Coal Corporation held in Evansville, Indiana, this 30th day of June, 1942.
A copy of the minutes of this meeting is marked Exhibit 3 and by this reference made a part hereof.
13. The proposal for the acquisition of assets by plaintiff was accepted on the same day by plaintiff through its officers and directors, and a resolution was adopted authorizing the issuance of plaintiff’s stock to the last stockholders of Ingle *140 Coal Company in identical proportions with their holdings in that company, except for the aggregate 500 shares which were to be subscribed in equal amounts at par by Frances I. Bebb, Katherine I. Mitchell, David Ingle, and William D. Ingle, as shown in finding 8. Plaintiff also adopted a resolution for the acceptance of the properties of Ingle Coal Company and the assumption of its liabilities. Thereupon, plaintiff, by its president and secretary, executed and delivered to each of the stockholders of Ingle Coal Company a separate agreement reciting plaintiff’s promise to make payment to each of the individual stockholders of an additional royalty of 50 per ton on all coal mined by plaintiff, such payments to be made in the following stated percentages, beginning on August 25, 1942, and monthly thereafter:

Percent

Prances I. Bebb- 25
Katherine I. Mitchell- 25
David Ingle- 17
David Ingle, Jr- 4
Thomas H. Ingle- 4
William D. Ingle_ 15
William D. Ingle, Jr- 2
Kenneth B. Ingle- 2
Jane Ingle Meig- 2
Bradford B. Ingle- 2
Donald B. Ingle_ 2
A copy of this agreement is marked Exhibit 4 and by this reference made a part hereof.
14. Deeds and conveyances of all the properties of the Ingle Coal Company had been prepared and executed by its officers and were thereupon delivered by them, as officers of the Ingle Coal Company to the officers of the plaintiff, and the president and the secretary of the plaintiff were directed to issue shares of stock of the new corporation as agreed upon. Thereupon, the shares of stock were so issued, including 125 additional shares to each of the four stockholders named in finding 8. The amount of $12,500 was credited on each of the previously issued notes of the Ingle Coal Company, which notes constituted part of the obligations of the old company assumed by the plaintiff.
15. The balance sheet of Ingle Coal Company as of June 30,1942, is as follows:
*141 Ingle Coal Company
Elberfeld, Indiana
BALANCE SHEET JUNE 30, 1942
Assets :
Cash and Bank-$124,322.97
Accounts Receivable_ 34, 093. 65
Advances to Employees_ 891. 34
Inventory — Coal_ 2, 368.19
U. S. Bonds (Tax Series) & Int_ 20, 016.12
Stocks- 50. 00
Plant & Equipment, Less Depreciation_ 330,936.50
Mine Development, Less Depletion_ 34, 033.28
Wick Coal Land, Less Depletion_ 1,4S2. 03
Wick Surface Land_ 1, 257.00
Wick Machinery_ 3, 700.92
Prepaid Insurance_ 2,922. 02
Indiana U. C. Tax (1941) Refundable-55.84
Total-$556,129.86
Liabilities and Credits :
Accounts payable_ $16,448. 51
Notes Payable_ 272,460. 79
Res. for Taxes, except Income_ 10,610. 77
Accrued Expense_ 6, 414.18
Res. for Fed. Income Taxes_ 37, 665. 06
Capital Stock- 199,767.48
Surplus and Profits_ 12, 763. 07
Total-$556,129. S6
The balance sheet of Ingle Coal Corporation as of June 30,1942, is as follows:
Ingle Coal Corporation
Elberfeld, Indiana
BALANCE SHEET JUNE 30, 1942
Assets :
Cash_$124,322.97
Deposits_ _ 48.00
Coal Inventory_ _ 2,368.19
Indiana Coal Stock-_ 50.00
Prepaid Items_ _ 2,922. 02
Wick Mine Assets_ _ 6, 439. 95
Depreciable & Depletable Assets_ 362,616. 96
Total_$498,768. 09
*142 Liabilities and Capital :
Notes Payable_$222,460.79
Stockholders Account_ 26,307.30
Capital Stock___ 250, 000. 00
Total. $498, 768. 09
16.The officers and directors of Ingle Coal Company, plaintiff’s predecessor, and of Ingle Coal Corporation, plaintiff herein, on June 30,1942, were as follows:

Ingle Ooal Company

David Ingle, president and director
William D. Ingle, vice president, secretary and director
Frances I. Bebb, director
Katherine I. Mitchell, director
J. H. Iglehart, director

Ingle Coal Corporation

David Ingle, president and director
William D. Ingle, vice president and director
Kenneth K. Ingle, secretary
Frances I. Bebb, director
Katherine I. Mitchell, director
J. H. Iglehart, director
17. Katherine I. Mitchell died on May 5,1943.
18. The stock of the plaintiff corporation, owned by the Estate of Katherine I. Mitchell, was sold as follows:

Number of Total purohase

Date Purchaser shares price

Juue 12, 1944_David Ingle_112% $11,250.00
June 12, 1944_Thomas H. Ingle_ 100 10, 000.00
June 12, 1944_David Ingle, Jr__ 100 10,000.00
June.12, 1944_William D. Ingle_312% 31,250.00
On June 28,1944, Frances I. Bebb donated to each of her six nephews and her one niece 25 shares of her original stock in the plaintiff. The gifts upset the equality of the holdings by the David Ingle and William D. Ingle branches of the family. The balance of Frances I. Bebb’s stock in the plaintiff corporation was sold on April 1,1946, at par, as follows: David Ingle — 26214 shares, William D. Ingle — 187 shares. After the above sales had been made by the Estate of Katherine I. Mitchell and by Frances I. Bebb, the entire stock in the plaintiff corporation was held in equal proportions by the families of David Ingle and William D. Ingle.
*143 19. After the disposition of their stockholdings in the plaintiff corporation, Frances I. Bebb and the heirs or legatees of Katherine I. Mitchell retained their interest in the agreement designated as an “over-riding royalty contract.” They still receive payments thereunder.
20. Plaintiff accrued and currently paid the following amounts under the agreements with the Wassons and the Ingle, Bebb and Mitchell interests, the payments being designated in plaintiff’s books as royalties:

Year Ingle, BeVb and

From July 1,1942, to To Wassons Mitchell interests
December 31,1942_$19,185.25 $19,185.25
1943 _ 37,584. 60 37,584.60
1944_ 46,685.95 46,685.95
1945_ 40,926. 55 40,926.55
1946 _ 35,554.55 35,554.55
1947 _ 42,761.10 42, 761.10
1948_ 34,223. 70 34,223. 70
21. On its federal tax returns for the taxable years 1947 and 1948, plaintiff claimed deductions in the respective amounts of $85,522.20 and $68,447.40, under the designation “royalties.” Included in the amounts were the amounts of $42,761.10 and $34,223.70 paid or accrued to James E. and Charlotte E. Wasson, lessors, representing royalty payments at the rate of 50 per ton for each ton of coal mined. Also included in the amounts were the amounts of $42,761.10 and $34,223.70, respectively, representing payments computed at the rate of 50 per ton, under the contract designated as an over-riding royalty agreement, for each ton of coal mined. These latter payments were made by plaintiff by monthly checks drawn on the City National Bank, Evansville, Indiana, payable to the order of David or Kenneth E. Ingle, agent, for the benefit of the interests other than the Wassons, listed in finding 20. The checks were endorsed either by David Ingle or by Kenneth E. Ingle, and deposited in the account “David or Kenneth E. Ingle, Agent”, in the Old National Bank, Evansville, Indiana.
22. Upon an audit of plaintiff’s corporation income tax return for the calendar year ended December 31, 1947, the Commissioner of Internal Eevenue disallowed as a deduc *144 tion the amount of $42,761.10 paid as above under the contract designated as an over-riding royalty agreement. As a result, the Commissioner increased the plaintiff’s total tax liability to $284,047.87, upon which an additional tax was timely assessed against plaintiff for 1947 in the amount of $14,740.34. On June 12,1950, plaintiff paid to the Collector of Internal Revenue for the District of Indiana the additional tax of $14,740.34, plus interest thereon of $1,836.69, a total of $16,577.03.
23. Upon an audit of plaintiff’s income tax return for the calender year 1948, the Commisioner of Internal Revenue disallowed as a deduction the amount of $34,223.70 which plaintiff had paid under the contract designated as an over-riding royalty agreement. As a result, the Commissioner increased plaintiff’s total tax liability for 1948 to $310,471.08, upon which an additional tax was timely assessed against plaintiff in the amount of $18,558.51. On June 12, 1950, plaintiff paid to the Collector of Internal Revenue for the District of Indiana the additional tax, plus interest thereon in the amount of $1,198.93, a total of $19,757.44.
24. On March 6,1951, plaintiff duly filed with the Collector of Internal Revenue a claim on Treasury Department Internal Revenue Service Form 843 for the refund of $18,085.91 of the income tax and interest paid for its taxable year ended December 31, 1947. In the claim it was set forth that the claim should be allowed for the following reasons:
On June 30, 1942, the taxpayer acquired the right to mine coal from the Ditney Hill Mine on condition that it pay to the former stockholders of Ingle Coal Company an overriding royalty of five cents a ton on all coal produced from said mine. The taxpayer executed and delivered to each of the former stockholders of the Ingle Coal Company a separate agreement evidencing its obligation to make payment to each of such individuals his respective proportion of the overriding royalty of five cents a ton. During the taxable year the petitioner mined 855,222 tons of coal from the Ditney Hill Mine and became obligated to and did pay to the parties named the overriding royalty of five cents a ton, a total payment of $42,761.10. The overriding royalty of $42,761.10 represented ah ordinary and.necessary expense paid or incurred by the taxpayer during the taxable year in carrying on its trade or busi *145 ness of producing and selling coal and is an allowable deduction for said year under section 23(a) of the Internal Revenue Code.
In support of this claim, the taxpayer shows that the final decision in the case of Ingle Coal Corporation v. Commissioner, 174 Fed. (2d), 569, involving the years 1942 and 1943, is not res judicata of this claim for the reasons that the facts have materially changed, namely, (a) a different taxable year is involved, and (b) the two largest stockholders, Mrs. Katherine I. Mitchell and Mrs. Frances I. Bebb, owners of one-half of the entire outstanding stock during 1942 and 1943, disposed of all of their stock prior to the beginning of the taxable year here involved, but retained ownership of their overriding royalty contracts.
25. On March 6,1951, plaintiff duly filed with the Collector of Internal Revenue a claim on Treasury Department Internal Revenue Service Form 843 for the refund of $14,-203.94 of the income tax and interest paid for its taxable year ended December 31, 1948. This claim was identical to the claim for 1947, except for the following:
During the taxable year the petitioner mined 684,474 tons of coal from the Ditney Hill Mine and became obligated to and did pay to the parties named the overriding royalty of five cents a ton, a total payment of $34,223.70.
26. Plaintiff’s net incomes for the last six months of 1942 and for each of the calendar years to and including 1948, with allowing and without allowing the deductions of the character claimed allowable in this action, were as follows:

Net income Net income with allowing without allowing Tear the deduction the deduction

1942_$76,771. 83 $95,957.08
1943_ 195,615.38 233,199.98
1944_ 293, 744. 01 340,429.96
1945_ 193,241. 81 234,168.36
1946_ 36,510.87 72,065.42
1047_ 709,452.24 752,213.42
1948_ 788,177.80 822,401. 50
27. Plaintiff’s earned surplus for the last six months of 1942 and for each of the calendar years to and including 1948, after charging its surplus account with $750,000 in 1947 for a new mine purchased, was as follows:

*146
Year ended December 81, Earned surplus

1942__$56,844.82
1943_ 209,797.78
1944_ 258,661.64
1945_ 359,539.14
1946_ 447,288.29
1947_ 185, 596.06
1948_ 675,195.03
28.Plaintiff paid dividends to stockholders for the last sis months of 1942 and for each of the calendar years to and including 1948 as follows:

Year Dividends paid

1942_ None
1948_ None
1944_ $3,750.00
1945_ 18,750.00
1946_ 15,000.00
1947_ 65,000.00
1948_ 115,000.00
29. Plaintiff’s claims for refund, filed on March 6,1951, for the years 1947 and 1948, have not been formally rejected but more than six months had expired after the filing date before this case was instituted on September 20, 1951.
30. Coal was in great demand in 1942, to and through 1945 and there was a steady increase in the price of coal through the war years, beginning in 1940.
31. The liquidation of the Ingle Coal Company, the transfer of its assets and liabilities to its stockholders and their transfer of them to the Ingle Coal Corporation in exchange for its stock and the overriding royalty contract, was made for the purpose of reducing taxes, assuring a more definite income to Katherine I. Mitchell and Frances I. Bebb, two of the stockholders, and allowing the disposition of the stock for a lesser price, while still retaining an interest in the coal business.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and its petition is therefore dismissed.